Robert S. MacARTHUR, Plaintiff,

v.

The BANK OF NEW YORK, Defendant.

No. 79 Civ. 5785.

United States District Court,
S. D. New York.

Oct. 28, 1981.

Dan Brecher, New York City, for plaintiff.

Hall, McNicol, Hamilton & Clark, New York City, for defendant.

## OPINION AND ORDER

SOFAER, District Judge:

During the jury trial of this action, it became apparent that a partner in the firm representing the defendant ought to testify on behalf of his client. The court *sua sponte* disqualified defendant's counsel and declared a mistrial. Several of the issues raised by the disqualification deserve comment.

This is an action sounding in contract. Plaintiff alleges that the defendant Bank entered into a joint venture with him to manage and reorganize four failing companies that were indebted to defendant. The companies' indebtedness to the Bank allegedly was to be reduced by repayment or sale of the companies to a third party. The plaintiff claims that the defendant breached the joint venture agreement by failing to compensate him in accordance with its terms. Specifically, he alleges that the defendant refused to execute a sale of the companies to a third party and that the defendant refused to transfer the companies' common stock to him as agreed. The plaintiff contends that these acts deprived him of compensation. Alternatively, plaintiff seeks recovery in quantum meruit.

The defendant denies that a joint venture existed and alleges that plaintiff received full compensation for services rendered. Alternatively, he claims that, even if a joint venture agreement did exist, it was conditioned upon reduction of the companies' debt. Defendant contends that the escalation of the debt during plaintiff's management precludes any recovery. Defendant has also interposed a counterclaim for money due under a promissory note.

On the second day of plaintiff's direct testimony, it became evident to the court that Donald McNicol, a senior partner in the firm representing defendant (Hall, McNicol, Hamilton, Clark & Murray), was intimately involved in the events at the heart of this litigation, and that other members of the firm (particularly William Collins) were involved to a lesser extent.[1] Ab-

---

1. The record at trial, along with plaintiff's supplemental answers to interrogatories, indicate that McNicol and Collins in particular, and the Hall, McNicol firm in general, participated ac-

sent testimony of McNicol and others in the firm it appeared impossible for the bank effectively to explain or rebut plaintiff's testimony. For this reason, the court suggested to the litigants, outside the presence of the jury, that defendant would need to call McNicol as its witness and that this might require his firm to withdraw from further representation of defendant in this suit.

In the discussions that followed, the parties repeatedly revised their positions on the disqualification issue. *See* Transcript of Trial ("Tr.") 294, 300–301, 304, 306–307, 310–319, 332, 349–350, 359. Plaintiff's attorney declined to move either for disqualification or for a mistrial, but nevertheless repeatedly raised questions as to the propriety of defendant's counsel's continued participation. Tr. 294, 304, 314, 317–318. Initially, defendant's attorney took the position that McNicol's testimony was unnecessary. Later, counsel for defendant said they would not call McNicol, but asked the court to instruct the jury that the reason McNicol did not testify was that this firm could not act as counsel if he had done so. Tr. 332. Ultimately, defense counsel agreed that McNicol and other members of the firm ought to testify on behalf of defendant, but argued that disqualification was inappropriate as it would cause substantial hardship to the client. The defend-

ant Bank of New York, through its officers, remained adamant in its position that it wanted Hall, McNicol to continue as its counsel, even if that would preclude defendant from offering testimony of firm members. Tr. 311–312, 319–320, 325, 327.

■ The court followed the mandate of Disciplinary Rule 5–102(A) of the Code of Professional Responsibility ("DR 5–102(A)") and ordered defendant's counsel to withdraw. That Rule provides:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR. 5–101(b)(1) through (4).

The court declared a mistrial because of the disqualification. The defendant needed several weeks to retain and properly inform new trial counsel, making it impracticable to retain the jury that had already been impanelled. The fact that the jury would conceivably speculate to the prejudice of either party as to the reason counsel had been changed after two days of testimony

tively in many of the contested events. Plaintiff's allegations as to particular incidents illustrate why the testimony of defendant's attorneys is imperative. First, plaintiff alleged that McNicol stated in a meeting with him on July 6, 1978, that McNicol would investigate the transfer of common stock. Second, plaintiff testified that he discussed with Collins the law firm's failure to transfer shares of common stock in a telephone conversation on July 21, 1978. Third, a meeting took place on January 17, 1979, between plaintiff, his attorney (Paul Mishkin), and McNicol regarding defendant's compensation of plaintiff. No other representative of the Bank was present. Fourth, on December 20, 1978, negotiations took place between McNicol, the plaintiff, a bank officer, and a prospective purchaser of the business (Salinas), regarding the sale of the business. Fifth, on January 2, 1979, at the office of Hall, McNicol, the plaintiff and McNicol allegedly altered the terms of the sale. The negotiations that took place are in sharp dispute. Finally,

on May 4, 1979, McNicol acted as agent of defendant when he called plaintiff to fire him. The testimony of defendant's witnesses on that conversation would be based on McNicol's report to them.

Aside from these particular incidents, the firm's conduct permeates this case. McNicol appears to have acted as the lead negotiator and agent for defendant in many of the contested matters. Moreover, plaintiff asserts that members of the firm repeatedly interfered with his performance of his duties with respect to the companies and joined in defendant's misrepresentations. In essence, plaintiff claims that the law firm either was following the Bank's secret orders, in which case defendant is liable for breach of the alleged contract, or the firm disobeyed the Bank's orders, in which case the firm itself might be culpable, making defendant liable in turn for adopting the firm's actions as its agent.

was sufficient reason to warrant a new trial.

■ Strong policies underlie DR 5-102(A). Calling a party's attorney as a witness undermines the integrity of the judicial process. The rule operates to protect the interests of the plaintiff, the interests of the adverse party, and the reputation of the legal profession as a whole. *See generally* 6 J. Wigmore, *Evidence* § 1911 (Chadbourn rev. ed. 1976); Note, *The Advocate Witness Rule: If Z, then X. But Why?*, 52 N.Y.U. L. Rev. 1365 (1977); American Bar Association Committee on Ethics and Professional Responsibility, Formal Opinion 339 (January 31, 1975) [hereinafter cited as ABA Report]. These interests are well expressed in Ethical Consideration 5-9 ("EC 5-9"):

> Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

DR 5-102(A) implicitly recognizes the potential conflict of interest with which an attorney may be faced in this situation: attorneys anxious to participate in the litigation might fail to step aside as counsel and testify even if their testimony could help the client; other attorneys might fail to step aside and testify because the client insists upon their continued representation. The Code of Professional Responsibility seeks to prevent such conflicts by keeping separate the roles of attorney and witness. EC 5-9.

DR 5-102(A) also operates to protect the interests of the adverse party. A jury may view an attorney as possessing special knowledge of a case and therefore accord a testifying attorney's arguments undue weight. Also, as EC 5-9 suggests, the adverse party's attorney may, for reasons of professional courtesy and court etiquette, be handicapped in challenging the testimony of another lawyer. *General Mill Supply Co. v. SCA Services, Inc.*, 505 F.Supp. 1093 (D.Mich.1981). Finally, the bar is ill-served when an attorney's veracity becomes an issue in a case; lay observers especially might speculate whether counsel has compromised his integrity on the stand in order to prevail in the litigation. *International Electronic Corp. v. Flanzer*, 527 F.2d 1288, 1294 (2d Cir. 1975); *United States ex rel. Sheldon Electronic Co. v. Blackwood Heating & Plumbing Co.*, 423 F.Supp. 486, 489 (S.D.N.Y.1976); 6 J. Wigmore, *supra*, § 1911 *Cf.* EC 7-24 (attorney may not claim innocence of client or justness of position to the jury). Having seen the attorney take an oath on the witness stand, the jury might accord testimonial weight to his closing arguments, or might simply place undue weight on the testimony of a court officer. *See* Developments in the Law, *Conflicts of Interest in the Legal Profession*, 94 Harv.L. Rev. 1244, 1290 (1981).

■ DR 5-102(A) applies when a lawyer "ought to be called as a witness on behalf of his client." That the lawyer may not actually testify is not controlling. What matters is that he ought to testify. *J.P. Foley & Co., Inc. v. Vanderbilt*, 523 F.2d 1357 (2d Cir. 1975). Defendant's argument that McNicol's testimony would merely corroborate other testimony, even if accurate, is unavailing. The test is whether the attorney's testimony could be significantly useful to his client; if so, he ought to be called.

This rule, of course, requires a careful evaluation of the relevant issues in the case and of other available testimony. An additional corroborative witness would almost always be of some use to a party, but might nevertheless be essentially cumulative. At

some point, the utility of additional corroboration is de minimus and does not require the attorney's disqualification. EC 5–10 ("It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue.") Here, independent counsel would seem likely to call McNicol, both to supply his own account of the events in question (even if corroborative) and to prevent the jury from speculating about his absence. His testimony would be far from cumulative, since his role was pivotal, and his conduct was brought into question. *See* note 1 *supra.*

▮ A second feature of DR 5–102(A) is that the stricture is mandatory: the party cannot choose between the attorney's testimony and his representation. The rule embodies a conclusive preference for testimony: "Where the question [of testimony versus representation] arises doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." EC 5–10. A party can be represented by other attorneys, but cannot obtain substitute testimony for a counsel's relevant, personal knowledge.

In deciding whether an attorney should be disqualified, courts have balanced the interests underlying the rule against the potential damage to the client. *General Mill Supply Co. v. SCA Services, Inc., supra,* 505 F.Supp. at 1096. Yet, absent extreme hardship to the client, the mandate of 5–102(A) has been strictly invoked.

Aside from the likelihood of actual prejudice . . ., the court must be mindful of the possibility that testimony by an attorney in the case may lead the public to think "that lawyers may as witnesses distort the truth," thereby diminishing the public's respect for and confidence in the profession. . . . Where doubt may becloud the public's view of the ethics of the legal profession and thus impugn the integrity of the judicial process, *it is the responsibility of the court to insure that the standards of ethics remain high.*

*United States ex rel. Sheldon Electric Co. v. Blackhawk Heating & Plumbing Inc.,* 423 F.Supp. 486, 489 (S.D.N.Y.1976) (emphasis supplied), *quoted in General Mill Supply Co. v. SCA Services, Inc., supra,* 505 F.Supp. at 1098.

Nor may the client waive the rule's protection by promising not to call the attorney as a witness. The ostensible paternalism of disregarding such waivers is justified by the circumstances in which the problem arises. The client will generally be reluctant to forego the assistance of familiar counsel or to incur the expense and inconvenience of retaining another lawyer. The most serious breaches of the rule, in which an attorney has become intimately involved in the subject matter of the dispute, will often be the very situations in which withdrawal is most burdensome. Moreover, the party will generally be guided in its decision by the very attorney whose continued representation is at issue. At the same time, the attorney will be reluctant to jeopardize good relations with the client and may—against his better judgment—defer to the client's desire for representation.

▮ The mandatory nature of DR 5–102(A) also requires that the court be able to disqualify counsel *sua sponte* when the need arises. Normally, a party will seek to have opposing counsel disqualified, and that moving party will have the burden of showing that continued participation in the case would violate the Code of Professional Responsibility. *See, e. g., Zions First National Bank, N.A. v. United Health Clubs, Inc.,* 505 F.Supp. 138 (E.D.Pa.1981); *Freeman v. Kulicke & Soffa Industries, Inc.,* 449 F.Supp. 974 (E.D.Pa.1978), *aff'd,* 591 F.2d 1334 (3d Cir. 1979). While all members of the bar share responsibility for avoiding breaches of ethical rules, an attorney may avoid pressing for disqualification out of a desire to avoid clashing with opposing counsel or to obtain tactical advantages from the prospect that the opposing firm's attorneys might be prevented from testifying. Thus, where neither party moves for disqualification, the court must intervene to ensure that the mandate of DR 5–102(A) is

followed. Furthermore, although the problem of disqualification should be anticipated as early as possible to minimize expense, inconvenience, and needless expenditure of judicial resources, the rule controls irrespective of when the need for the attorney's testimony becomes evident. "Regardless of when the problem arises, [the lawyer's] decision is to be governed by the same basic considerations." EC 5–10. The mandatory ethical obligations imposed by DR 5–102(A) cannot be overcome by the equitable defenses of laches, waiver, or estoppel, although the burden on the party seeking disqualification may be greater as a result of his undue delay and may, in some cases, justify invocation of the substantial-hardship exception to DR 5–102(A) discussed below.

■ The remedy for abuse of DR 5–102(A) by opposing counsel is not to disregard the rule, but rather to impose other sanctions. Parties might well attempt to use this ethical rule, like others, as a litigation tactic. The Court must therefore be careful to determine whether the testimony of the implicated attorney is genuinely necessary or merely a fabrication of his adversary. DR 5–102(B), which governs situations in which the opposing party seeks to call its adversary's attorney as a witness, makes clear that the court must prevent a litigant from using the witness disqualification rule to rob a party of its chosen representative. See J.P. Foley & Co., Inc. v. Vanderbilt, supra, 523 F.2d at 1360 (Gurfein, J., concurring). Even if disqualification is appropriate, the court can impose costs upon the adverse party for culpable failure to raise the ethical issue at an earlier stage.[2] Use of the Code of Professional Responsibility as a strategic tool can itself constitute unethical conduct that must be referred to disciplinary authorities. But any such abuse by opposing counsel does not cure the original violation and cannot vitiate the disciplinary rule.

■ Finally, the substantial-hardship exception invoked by defendant must be narrowly construed. Despite the strictures of DR 5–102(A), a lawyer who ought to testify may continue to represent the client if his withdrawal "would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." DR 5–102(A) (incorporating DR 5–101(B)(4)). Defendant claims that, because of counsel's familiarity with the underlying facts and extensive preparations for trial, withdrawal would cause substantial hardship.

Hardship alone, however substantial, is insufficient to permit continued representation. The deprivation to the client will often be greatest precisely when the attorney was most intimately involved in, and familiar with, the events giving rise to the suit. See, e. g., United States ex. rel Sheldon Electric Co. v. Blackhawk Heating & Plumbing Co., supra, 423 F.Supp. at 490. The familiarity of the Hall, McNicol law firm with the client's case is not sufficient to permit an exception to the rule. General Mill Supply Co. v. SCA Services, supra, 505 F.Supp. at 1099. Withdrawal will be costly whenever it occurs (though the expense can be minimized by invocation of the rule at the earliest possible time). But if the expense and delay routinely incident to disqualification satisfied the substantial-hardship exception, that exception would soon swallow the rule.

■ The exception expressly qualifies the hardship that must be shown to permit continued representation as one that arises "because of the distinctive value of the lawyer or his firm as counsel in the particular case." For example, in a highly technical case, an attorney might have acquired unique expertise with respect to the matters in dispute, and no substitute counsel could supply the client with comparably adequate representation; in such a case, the serious prejudice to the client, when

2. The court denied defendant's motion for costs in this case. Plaintiff did not hide the pertinent issues from defendant and did not fabricate the need for McNicol to appear. Plaintiff's second set of interrogatories, in particular, put defendant on ample notice of the substantial involvement of McNicol and others.

weighed against the significance of the testimony, might justify invocation of the exception. Similarly, a long-standing professional relationship could conceivably create a situation where an attorney has an extraordinary and irreplaceable familiarity with the affairs of his client. ABA Report, *supra,* at 3; *Miller Electric Construction, Inc. v. Devine Lighting Co., Inc.,* 421 F.Supp. 1020, 1023 (W.D.Pa.1976). This latter exception could work to alleviate, in at least some cases, the use of DR 5–102(A) as a tactical weapon because an attempt to have opposing counsel disqualified is most likely to occur when that counsel is for some reason irreplaceable. But such instances will be rare, ABA Report, *supra,* at 4, and the burden of establishing their existence must fall upon the party opposing disqualification. *Supreme Beef Processors v. American Consumer Industries,* 441 F.Supp. 1064 (N.D.Tex.1977). Here, defendant failed to demonstrate that his attorney has distinctive value as trial counsel.

Finally, defendant objects that the effect of the court's ruling, if consistently applied, would be to prevent a law firm from maintaining a continuing relationship with a client. That fear is groundless. A lawyer can choose, as McNicol did here, to participate actively in a client's business affairs—not just as an adviser, but also as a negotiator and agent. (McNicol was also a director and a member of the executive committee of the company that plaintiff claims to have rehabilitated.) Such conduct is entirely proper. (But if an attorney chooses to become intimately involved in the client's business, then he or she must be prepared to step aside if the matters involved result in litigation. This may be displeasing to firms that wish to have some members act as businessmen and others as litigators. But when these firms place themselves in the position of having an attorney acquire

information that makes his testimony necessary, they must accept the consequences.)

The circumstances of this case do not suggest culpability on the part of defendant's counsel. They acted in good faith, and appear to believe—however unjustifiably—that their continued representation of defendant is proper. But DR 5–102(A) must be applied despite the purest intentions. The parties concede that McNicol ought to appear as a witness for defendant, so his firm must withdraw as trial counsel.[3]

SO ORDERED.

---

**3.** The disqualified firm may consult with defendant's substitute counsel and assist in preparing for trial. *Norman Norrell, Inc. v. Federated Department Stores, Inc.,* 450 F.Supp. 127 (S.D.N.Y.1978). The firm's request that it be permitted to continue to represent defendant in renewing a motion for summary judgment was also granted, since no witness will be called,

and since counsel have previously made such a motion and could renew it with far less cost than would be entailed in requiring new attorneys to perform this task. A hearing held on February 11, 1981, demonstrated that representation by Joseph Barlett, Esq., of the firm Gaston, Snow & Ely, would not implicate DR 5–102(A).