HEALTHCREST, INC., a Georgia Corporation, Plaintiff,

v.

AMERICAN MEDICAL INTERNATIONAL, INC. ("AMI"), a Delaware Corp.; Brookwood Medical Center of Eufaula Incorporated; Brookwood Medical Center of Houston Incorporated; Eastern Professional Properties, Inc., A Delaware Corp.; Gordon Crowell Memorial Hospital, Inc., A North Carolina Corp.; and Lister Hill Hospital, Inc., An Alabama Corporation, Defendants.

Civ. A. No. C84–1405A.

United States District Court, N.D. Georgia, Atlanta Division.

April 10, 1985.

cases, many of which involved multiple parties plaintiff.

David C. Jensen, Peterson Young Self & Asselin, Atlanta, Ga., for plaintiff.

Halsey G. Knapp, Jr., Atlanta, Ga., for defendants.

## ORDER OF COURT

MOYE, Chief Judge.

The above-styled breach of contract action is before the Court on the defendants' motion to disqualify the plaintiff's law firm. This motion raises difficult and complex issues concerning the ethical standards applicable to lawyers who wish to represent clients in litigation involving transactions that the lawyers worked on prior to the litigation. After a review of the pleadings and case law and a balancing of the competing interests, this Court concludes that the defendants' motion to disqualify the plaintiff's law firm must be granted.

## FACTUAL BACKGROUND

The contract at issue in this case involves the sale by the defendants to the plaintiff of three hospitals. This contract was initially formed in March, 1984 in Beverly Hills, California. The contract was agreed to after six days of negotiations at the defendants' offices. Present during these negotiations were three lawyers from Peterson Young Self & Asselin (Peterson Young); two of the plaintiff's executives; and lawyers representing the defendants.

On June 28, 1984, a representative of defendant AMI and several of AMI's in house attorneys went to the law offices of Peterson Young to attempt to close the sale of the hospitals listed in the contract. When they arrived, however, they were told by members of the Peterson Young firm that there were zoning problems related to one of the hospitals. Following this meeting, AMI representatives met with Phil Self, an attorney for Peterson Young, and attempted to work out the zoning problems. There were no corporate representatives of the plaintiff present at this meeting.

On the evening of June 28, the plaintiff presented a counter-proposal to the defendant which would have reduced the sales price of one of the hospitals by roughly $2,000,000.00 along with other changes. The next morning the plaintiff expanded its counter-proposal but no agreement was reached. Later, the defendants requested written assurances from the plaintiff that the transaction would close by September 13, 1984 but did not receive any such assurances.

The plaintiff's complaint alleges that the defendants' failure to tender complete performance by June 30, 1984 constituted a material breach of the contract. The defendants dispute this contention claiming that the contract did not have to close until September 13, 1984. The defendants also contend that the plaintiff violated the terms of the contract by not giving the defendants time to cure the zoning defect and by radically altering the contract prior to its closing.

The defendants have filed the present motion to disqualify the law firm of Peterson Young from serving as plaintiff's attorney in this case on the grounds that attorneys from that firm, because of their "often exclusive presence" at some of the formation stages of the contract at issue, "ought" to testify on behalf of the plaintiff. Before turning to the merits of the defendants' argument, this Court will detail the legal standards applicable to a motion to disqualify.

### A. *The Legal Standards*

This Court has the power and the obligation to regulate the conduct of attorneys who practice before it. *See Amoco Chemical Corporation v. MacArthur*, 568 F.Supp. 42, 44 (N.D.Ga.1983). The local rules of this Court mandate that all lawyers practicing before this Court must com-

ply with the Code of Professional Responsibility and Standards of Conduct adopted by the State Bar of Georgia. Local Rule 110–3. This Code of Professional Responsibility contains the following regulations governing a lawyer who might be called upon to testify for his client:

A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony would relate solely to an uncontested matter;

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client;

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

D.R. 5–101(B).

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in D.R. 5–101(B)(1) through (4).

D.R. 5–102(A).

The crucial issue facing this Court is whether a member of Peterson Young "ought to be called as a witness" in this case. The Courts that have interpreted D.R. 5–101(B) and D.R. 5–102(A) have reached conflicting interpretations of the word "ought." In *MacArthur v. Bank of New York*, 524 F.Supp. 1205, 1208 (S.D.N.Y.1981), the Court stated that the "ought to be called" test required the Court to determine "whether the attorney's testimony could be significantly useful to his client;" and, if so, the attorney should disqualify himself. Other courts, however, have interpreted the "ought to be called" test narrowly requiring a showing that the attorney is an "indispensible witness" before granting a motion to disqualify. *See J.D. Pflaumer, Inc., et al., v. United States Department of Justice*, 465 F.Supp. 746 (E.D.Penn.1979).

In addition to the controversy over the interpretation of the term "ought", the courts differ as to how much input the client should have in situations such as the one before this Court. In *Pflaumer, supra*, the court made the following observation:

Clearly, where there is a good faith dispute between the parties as to whether a lawyer-witness possesses crucial information, that attorney and his client are in the best position to determine whether his testimony is in fact indispensable ... Plaintiffs and their counsel should be permitted to present their case according to their own best judgment, and if it is their best judgment that they can get by without testimony from counsel, then it is certainly not up to defendants to urge upon them a different plan of presentation that would necessitate disqualification.

*Pflaumer, supra*, at 747–48.

The *Pflaumer* court's deference to the litigation strategy of the client and attorney is not accepted by all courts. In *MacArthur, supra*, for example, the court held that a client cannot waive the dictates of D.R. 5–101(B). And, in *United States, ex rel. Sheldon Electric Co., v. Blackhawk Heating & Plumbing, Inc.*, 423 F.Supp. 486 (S.D.N.Y.1976), the court expressed the following concerns about an attorney testifying in a case:

Aside from the likelihood of actual prejudice ...; the court must be mindful of the possibility that testimony by an attorney in the case may lead the public to think that lawyers may as witnesses dis-

tort the truth … where doubt may becloud the public's view of the ethics of the legal profession and thus impugn the integrity of the judicial process, *it is the responsibility of the court to insure that the standards of ethics remain high.*

*Blackhawk* at 489. (emphasis added).

In light of the conflicting interpretations of D.R. 5–101(B) and D.R. 5–102(A) among the courts, this Court has searched for binding Eleventh Circuit precedent to guide this Court's path through this difficult area of the law. This search, however, has been only marginally successful. In *Draganescu v. First National Bank of Hollywood,* 502 F.2d 550 (5th Cir.1974), the court did not allow an attorney to represent his client when the attorney concededly was a material witness in the case. The bulk of this decision was concerned with the "substantial hardship" exception to D.R. 5–101(B). And, in *Cossette v. Country Style Donuts, Inc.,* 647 F.2d 526 (5th Cir.1981), the only other Eleventh or old Fifth Circuit case this Court could find relating to D.R. 5–101(B), the court did not engage in a lengthy discussion of the standards relevant to the issues of attorney disqualification. The *Cossette* Court merely denied the plaintiff's motion to disqualify the defendants' attorney noting that the plaintiff did not prove that the defendants' attorney was "aware of facts making it … obligatory to place themselves on the witness stand in order to advance the defendant's case completely and zealously." *Id.* at 30–31.

■ After a review of the relevant case law, this Court concludes that the best approach to solving problems arising under D.R. 5–101(B) and D.R. 5–102(A) is one which takes into account all of the relevant factors including the client's interest in hiring the counsel of its choice and the court's interest in preserving the integrity of the judicial system. Therefore, instead of adopting a rigid definition of the phrase "ought to be called" which might prove outcome determinative in many cases,[1] this

court feels that an in-depth examination of the peculiar facts of each case is necessary and that a client may be allowed to waive the dictates of D.R. 5–101(B) and D.R. 5–102(A) in some cases but not in other cases depending on the relative importance of the attorney's testimony.

### B. *The Present Case*

There appears to be two central issues that this Court will have to resolve when this case comes before it on the merits. First, the parties disagree as to when the contract at question needed to be closed. The plaintiff claims that the contract required closing before June 30, 1984 whereas the defendants argue that September 13, 1984 was the final closing date. The second issue involves a dispute as to what transpired between the parties during the June 28 and 29 meetings in Atlanta. The plaintiff claims that the defendants did not properly tender performance which constituted a material breach of the contract. The defendants argue that the plaintiff repudiated the agreement by offering a counter-proposal significantly different than the original agreement. The issue before this Court is whether the plaintiff's attorney "ought" to testify as to these matters.

Phil Self, a member of the Peterson Young firm, testified in his deposition that the plaintiff's argument that the contract had to be closed by June 30, 1984, is partly based on the "intent of the parties." Self, deposition at 15–16. The contract was drafted, however, with the aid of members of the Peterson Young firm including Mr. Self. The defendants argue, therefore, that Mr. Self, as well as other members of his firm, will have to testify at trial as to what date the parties intended to be the final closing date.

The plaintiff attempts to rebut the defendants' argument by noting that Mr. Ronald Turner, the plaintiff's President, was "intimately knowledgeable" regarding the terms of the contract and their meaning. The plaintiff also alleges that two

---

1. This Court feels that the Third Circuit's "indispensable testimony" standard is far too narrow to further the judicial system's interest in preventing the blurring of the roles of advocate and witness. It would be extremely difficult in most cases to establish that any witness's testimony is indispensable.

other of its officers are knowledgeable regarding the closing date of the contract. And, the plaintiff claims that the cross-examination testimony of two of AMI's officers supports its position. Because of the availability of the above-mentioned testimony, the plaintiff argues that it will not need to use the testimony of Peterson Young attorneys and therefore the motion to disqualify should be denied.

Although the plaintiff's argument has some merit, it is not convincing. It is true that the plaintiff might be able to present a prima facie case without the testimony of the lawyers who drafted the contract at issue. The applicable standard, however, is whether a Peterson Young attorney "ought" to testify on behalf of the client. Certainly, the drafter of a contractural provision in dispute would be the most qualified person to testify as to the meaning of that portion of the contract. It is undisputed that Peterson Young attorneys drafted the contract at issue in the case. This Court feels that testimony from these lawyers would be vital to the plaintiffs' case especially if the defendants put their own lawyers on the stand to testify as to the disputed clauses in the contract. Furthermore, members of the Peterson Young firm were present during the negotiations that took place between the parties on June 28 and June 29. What transpired at these meetings is disputed and this Court believes that the testimony of Peterson Young lawyers will be necessary in order for the plaintiff to adequately present his case.

Having made the foregoing observations, this Court feels that it ought to balance the harm caused to the plaintiff and the judicial system by the plaintiff being precluded from calling his attorneys to the stand with the plaintiff's right to the counsel of its choice. In this case, the plaintiff wants the counsel that represented him throughout the negotiations process to also represent him at trial. This Court feels great sympathy for the plaintiff who wishes to retain counsel whom it is familiar with and trusts. This Court also feels, however, that the testimony of the plaintiff's attorneys in this case is crucially important and that the fact-finding process will be severely limited if the plaintiff's attorneys do not testify at trial. Furthermore, this case is troubling to the Court because the plaintiff wishes to retain trial counsel who were also the attorneys who drafted the documents that triggered this litigation. Therefore, the Peterson Young firm will be arguing to the jury the meaning of documents they drafted and the nature of meetings they attended even if they don't actually testify on the witness stand. This Court concludes that the judicial system has an extremely strong interest in discouraging such a result.

In sum, this Court finds that the law firm of Peterson Young "ought" to testify on behalf of the plaintiff in this case and therefore the defendants' motion to disqualify is hereby GRANTED.[2] The Court directs the plaintiff to contact this Court's Deputy Clerk and arrange a suitable schedule for the hiring of new counsel.

---

**2.** The plaintiff has not argued that the exceptions to D.R. 5–101(B) and D.R. 5–102(A) are applicable to this case.