**CLINTON MILLS, INC., a corporation, and CMI Holdings, Inc., a corporation, Plaintiffs,**

**v.**

**ALEXANDER & ALEXANDER, INC., a corporation, Defendant and Third–Party Plaintiff,**

**v.**

**Robert M. VANCE, George H. Cornelson, C. Thaddeus Williams, C. Bailey Dixon, Steve F. Warren, Claude A. Crocker, J.R. Swetenburg, Walter A. Sigman, Leslie Negus, and W.J. Raleigh, Third–Party Defendants.**

C/A No. 6–87–2037–17.

United States District Court, D. South Carolina, Greenville Division.

June 1, 1988.

Thomas H. Pope, Pope & Hudgens, P.A., Newberry, S.C., John A. Chandler, Carey P. DeDeyn, Lauren A. Stoery, Sutherland, Asbill & Brennan, Atlanta, Ga., for plaintiffs.

James C. Parham, Jr., Greenville, S.C., Michael A. Doyle, Gregory Braden, Atlanta, Ga., for defendant and third-party plaintiff.

Michael J. Giese, Frank Plaxco, Leatherwood, Walker, Todd & Mann, Greenville, S.C., for third-party defendants.

## ORDER

JOE F. ANDERSON, Jr., District Judge.

The defendant and third-party plaintiff in this action, Alexander & Alexander (A & A) has moved for an Order disqualifying Mr. Edward Kallal and the law firm of Sutherland, Asbill & Brennan (Sutherland Asbill) of Atlanta, Georgia, from representing plaintiffs in this litigation. The motion is based on A & A's contentions that Kallal and other members of Sutherland Asbill were intimately involved in the events which formed the basis of this action and that Kallal's testimony would be both necessary and detrimental to his client. Oral argument was heard by the court on May 4, 1988 and the matter was taken under advisement. The motion is hereby denied.

## FACTS

Sutherland Asbill represented plaintiff Clinton Mills, Inc. (New Clinton) and its corporate predecessor, former third-party defendant Clinton Mills, Inc. (Old Clinton) throughout the events underlying and precipitating this action, namely an eventual leveraged buy-out (LBO) of Old Clinton which occurred in late 1986. The LBO was accomplished through the formation of a shell corporation, CMI Aquisition, Inc., a wholly owned subsidiary of plaintiff CMI Holdings, Inc. Old Clinton was merged into CMI Acquisition, ending the corporate existence of Old Clinton. After the completion of the merger, CMI Acquisition changed its name to Clinton Mills, Inc., or here, New Clinton. In the merger the owners of Old Clinton exchanged their stock for $85 million, with some receiving substantial stock holdings in CMI Acquisition.

Sutherland Asbill represented Old Clinton in the LBO negotiations and closing, and also represented Old Clinton earlier in 1986 when an initial public offering (IPO) of Old Clinton stock was being discussed. Kallal was given primary responsibility for preparing Old Clinton IPO registration statements for filing with the Securities and Exchange Commission (SEC) and acted as lead counsel and principal contact with the client as to the LBO negotiations and financing documentation. Deposition of Edward W. Kallal, Jr. at 5, 6, 14, 23, 24, 27–28 (February 22, 1988) (Kallal Depo.); Deposition of G. Thaddeus Williams at 61, 62, 120, 121, 122, 204, 206 (February 11–12, 1988) (Williams Depo.).

In July 1985 (prior to these negotiations) Old Clinton and A & A entered into a contract whereby A & A would provide actuarial services in connection with Old Clinton's two pension plans. Plaintiffs' Ex. 68A and Ex. 76. A & A was to provide annual valuations of the assets, liabilities, and costs of the pension plans and "evaluate and monitor emerging claims and expense liabilities, providing projections of future costs as needed for [Old Clinton's] budgeting process." Plaintiffs' Ex. 68A at 7.

The LBO was heavily financed, in part with some $70 million borrowed pursuant to a Bank Credit Agreement with a number of banks. In order to pay the debt, New Clinton made a public offer of senior subordinated debentures in April 1987. New Clinton was required to register a statement with the SEC. The accomplish this, Kallal and other attorneys updated and revised the registration documents prepared in anticipation of the IPO.

Prior to filing the final draft of the registration documents relating to the 1987 debentures, Sutherland Asbill determined certain amendments needed to be made to the Bank Credit Agreement, in part because of a change in the fiscal year date calculation and in part due to the offering of additional

debentures. Kallal was responsible for these amendments.

During this time period before registration, it was also discovered that A & A had erroneously calculated the liabilities of the pension plans. This determination necessitated certain revisions of the financial statements contained in Amendment No. 1 to the registration statement because the assets and liabilities of Clinton's pension plans were required to be placed in footnotes to its financial statements.

In this action, New Clinton seeks actual and punitive damages attributable to A & A's miscalculations. New Clinton contends A & A's mistake had two results: (1) the possibility of New Clinton being in default on its lending agreements because of the erroneous information contained therein; and (2) the delayed release of Amendment 1 to the registration statement which caused a delay in the offer, resulting in a higher bond interest rate for the offered debentures. A & A has raised a number of defenses to the plaintiffs' claims, two of which are pertinent to this motion. First, A & A claims it had no knowledge that its calculations were to be used for the registration or LBO documents. Second, A & A argues the recalculation was not the proximate cause of the delay in filing Amendment No. 1.

## LEGAL ANALYSIS

■ A motion to disqualify counsel is a matter subject to the court's general supervisory authority to ensure fairness to all who bring their case to the judiciary for resolution. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975); *Greenebaum–Mountain Mortgage Co. v. Pioneer National Title Insurance Co.*, 421 F.Supp. 1348, 1351 (D.Colo.1976). Under District Court Local Rules 2.08 and 2.09(h)(i)(2), the South Carolina Code of Professional Responsibility establishes the ethical standards governing the practice of law in this court. It is the court's responsibility to use its disqualification power to see that those who practice before the court adhere to the South Carolina Code. *See Ceramco, Inc. v.*

*Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir.1975).

In this motion, A & A relies on two provisions of the South Carolina Code of Professional Responsibility, Disciplinary Rules (DR) 5–101(B) and 5–102. The provisions are codified as South Carolina Supreme Court Rule 32 (*S.C.Code Ann.* Binder 22A). DR 5–101(B) of the South Carolina Code of Professional Responsibility provides as follows:

(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he *or a lawyer in his firm* ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

S.C.C.P.R. DR 5–101(B) (emphasis added).

DR 5–102 of the South Carolina Code of Professional Responsibility provides as follows:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a

lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

S.C.C.P.R. DR 5–102.

Thus, the rules in question provide that (1) a lawyer ought to withdraw if he should be a witness for his client; (2) that he should withdraw if he will be called by the other side and his testimony will be prejudicial to his client; and (3) there are exceptions for uncontested matters and the hardship of the client. A & A's attempt here to use Kallal's testimony does not require disqualification under any of these rules.

The rational for disqualifying an attorney-witness is set forth in Ethical Consideration 5–9, which states, in part, as follows:

If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

EC 5–9. *See also International Woodworkers of America v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1273 (4th Cir.1981).

There are many reasons for the general propositions as outlined in EC 5–9. When the testimony of the attorney aids his client, a "jury may view an attorney as possessing special knowledge of a case and therefore accord a testifying attorney's arguments undue weight." *MacArthur v. Bank of New York*, 524 F.Supp. 1205, 1208 (S.D.N.Y.1981). Additionally, "the adverse party's attorney may ... be handicapped in challenging the testimony of another lawyer." *Id.* Finally, the reputation of the bar as a whole may be diminished because

of the speculation as to "whether counsel has compromised his integrity on the stand in order to prevail in the litigation." *Id.*

If the attorney's testimony is contrary to his client's asserted position, different risks are posed. Another attorney in the witness' firm may "find it difficult to impeach or cross-examine her partner." *Liess v. General Electric Co.*, 659 F.Supp. 979, 984 (N.D.Ill.1987). There is the possibility that "jurors would be distracted from the merits of the case by speculation about the unusual nature of the representation." *Id.*

In order to prevail on its motion, A & A must carry the burden of proving that Kallal ought to be a witness for New Clinton or that his testimony would be helpful to A & A. *MacArthur,* 524 F.Supp. at 1209. While it is the court's responsibility to ensure the propriety of the bar, the act of disqualifying a firm "is ordinarily not taken without a strong showing." *Stanwood Corp. v. Barnum,* 575 F.Supp. 1250 (W.D. N.C.1983). Kallal cannot be subpoenaed to testify for A & A in this case since he is outside the subpoena power of this court. *Fed.R.Civ.P.* 45(e)(1). Thus, the testimony upon which A & A must rely is already before the court in the form of his deposition.

### DR 5–101

■ The South Carolina courts have not interpreted the meaning of the phrase "ought to be called as a witness" in any reported decision. In interpreting the Code of Professional Responsibility (the Model Code), the fourth circuit has looked to interpretations of the American Bar Association and of other states for guidance. *See Consolidated Gas Supply Corp. v. Fed. Energy Regulatory Commission,* 653 F.2d 129 (4th Cir.1981); *Hirschkop v. Snead,* 594 F.2d 356 (4th Cir.1979) (en banc).

The phrase "ought to be called" has been defined and applied in a number of ways. In *MacArthur, supra,* the test for whether an attorney should be a witness was whether the "testimony could be significantly useful to his client." *MacArthur,* 524 F.Supp. at 1208. Conversely, a much narrower view was adopted by the court in *Universal Athletic Sales Co. v. American*

*Gym, Recreational & Athletic Equipment Corp., Inc.*, 546 F.2d 530 (3rd Cir.1976), *cert. denied*, 430 U.S. 894, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), which concluded an attorney must be an "indispensable witness" before disqualification is required. *Id.* at 539 n. 21. The court in *Healthcrest, Inc. v. American Medical International, Inc.*, 605 F.Supp. 1507 (N.D.Ga.1985) used a more flexible approach, requiring a complete examination of the facts of each case before a determination is made as to counsel's competence. *Id.* at 1510. *See also Jackson v. J.C. Penney Co.*, 521 F.Supp. 1032, 1034 (N.D.Ga.1981) (disqualification is an equitable consideration, therefore court must employ balancing process).

This court, sitting in diversity, must anticipate what ruling would be forthcoming from South Carolina's highest court if this issue was presented. *Reid v. Life Ins. Co.*, 718 F.2d 677 (4th Cir.1983); *Garner v. Wyeth Laboratories*, 585 F.Supp. 189 (D.S. C.1984). It appears to this court that a more reasoned approach is that adopted by the court in *Healthcrest.*

In this instance, the facts do not support the conclusion that Kallal should be New Clinton's witness. New Clinton has not listed Kallal as its witness, nor has A & A met its burden of showing that Kallal ought to testify for New Clinton. It is undisputed that Kallal had primary responsibility for the Bank Credit Agreement Amendment and revisions of the registration statement which reflected A & A's new calculations. However, the events about which Kallal could testify are more thoroughly treated by other witnesses. In fact, two other law firms were involved in the registration process, Shearman & Sterling and Skadden, Arps, Slate, Meagher & Flom, both of New York. A & A has not explored the potential of these possible witnesses. Transcript (Tr.) of Motions Hearing (May 4, 1988) at 16.

In addition, during the debenture registration process, Peat Marwick Main & Co. was acting as New Clinton's accountants. Peat Marwick's Rich Eckstrom, the auditor in charge of the New Clinton account is scheduled to testify concerning the delay to

Amendment 1 allegedly caused by A & A's misfeasance. Plaintiffs' Memorandum in Opposition to Defendant's Motion at 26. Other bank officials should be able to comment on any delay caused because of the possibility of New Clinton being in default on its various lending agreements. New Clinton contends the default matter had to be investigated by the lending institutions prior to the debenture registration. *Id.* at 27.

In short, Kallal's testimony would only supplement the uncontested portions of New Clinton's other witnesses. Kallal can outline the dates on which the events occurred, but can offer little insight otherwise. The testimony in his deposition is of little, if any, probative value to his client.

### DR 5–102(B)

██ The other prong of A & A's argument is based upon DR 5–102(B), quoted above, which provides that a law firm may not continue a trial representation if one of its lawyers may be called by another party and his testimony is likely to prejudice his client. Again, there are no reported South Carolina decisions on this issue. Although not binding on this court, the analysis in the following authorities is persuasive. The court is of the opinion that the South Carolina courts would similarly rule and therefore, in accordance with *Reid, supra,* the foregoing reasoning is hereby adopted.

Under 5–102(B), the moving party must show two things. First, A & A must show that Kallal "is aware of facts making it likely or probabl[e] that he will be called to the witness stand to testify on a matter of importance to his client's case." *Witco Chemical Corp. v. Peachtree Doors, Inc.*, Civil Action No. C81–1648A (N.D.Ga. March 14, 1983) (available on LEXIS), *citing Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526, 530 (5th Cir.1981). The court is advised to decide if the attorney's " 'testimony is ... genuinely needed' " because of the risk that calling opposing counsel could be used as "a purely tactical maneuver." *Witco*, LEXIS slip op. at 3, *quoting Connell v. Clairol*, 440 F.Supp. 17, 18 n. 1 (N.D.Ga.1981). Second, A & A must make a "concrete showing of preju-

dice" to New Clinton if Kallal testifies. This prejudice must be "more than de minimus." *Id.* It must be "substantial enough that an independent lawyer might seek to cross-examine the witness and/or to question his or her credibility." *Id., quoting Freeman v. Kulicke & Soffa Industries, Inc.,* 449 F.Supp. 974 (E.D.Penn.1978), *aff'd.* 591 F.2d 1334 (3d Cir.1979). A & A must specifically point to "how and as to what issues in the case the prejudice will occur...." *Freeman,* 449 F.Supp. at 978.

This two prong test ensures against using subpoena power as a litigation device, by preventing the ouster of counsel if he is merely going to "testify in a way that confirms [opposing side's] own witness's testimony or conflicts with his ... client's witnesses on a point that is not disputed or is totally insignificant...." *Id.* at 977. *See also Stanwood,* 575 F.Supp. at 1251.

The court must first decide whether Kallal's testimony is necessary to A & A's defenses. A & A suggests that Kallal may speak appropriately to two areas: One, the question of whether Kallal gave notice to A & A that its numbers were going to be used in the LBO and later related documents and two, whether the miscalculations by A & A were the cause of the delay in the debenture registration.

Kallal's testimony is not prejudicial to New Clinton on the notice issue because New Clinton does not contend A & A specifically knew in advance about the public offering. There is no conflicting testimony on this point. Kallal testified that he does not recall talking to Paul Williamson (a vice-president of an A & A division) about actuarial matters in 1986, prior to the registration process. Kallal Depo. at 44. Kallal does not think he ever conversed with any other A & A employee or officer during that time. *Id.* at 43. Kallal did not give notice to A & A that the pension numbers were to be used as part of the LBO valuation process. *Id.* at 43. Although A & A contends Kallal's recollection (or lack thereof) aids their case, instead, the issue of notice is simply not at issue. Paul Williamson, Joe Zatto (Director, southern division of A & A Consulting Group) and possibly other experts should be able to relate to the court the effect, if any, this lack of notice may have had on A & A's performance. As to damages being within the contemplation of the parties, Zatto and/or other associates should be able to testify as to the typical uses for actuarial services. Because the question of notice is not contested by New Clinton it is not a matter of importance under *Witco, supra,* which would require Kallal's testimony. Moreover, Kallal's testimony is not prejudicial to his client, as the matter is not in dispute.

A & A's second argument is based on the assertion that Kallal can testify as to the cause of the registration delay. More specifically A & A wishes to use Kallal to establish that the recomputations were not the proximate cause of the late filing. Once again, A & A has failed to meet its burden on this point.

Before evidence or testimony may be admitted as relevant in a trial, it must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" than the fact would have been had there been no proffer. *Fed.R.Evid.* 401. A & A must specifically point to portions of Kallal's deposition which prejudice New Clinton and support A & A's contention that the delay in the debenture registration was proximately caused by the other amendments to New Clinton's financial statements, not due to the miscalculations of A & A.

A & A contends that Amendment No. 1 would have been filed on March 27, 1987, the date it was actually filed, regardless of A & A's revisions. New Clinton vigorously disputes this position. A & A claims Kallal's testimony is prejudicial to New Clinton because of the following:

1. Kallal waited for a copy of the fully executed amendment to the Bank Credit Agreement before he could sign off on Amendment No. 1 to the Registration Statement. The executed amendment was received by Kallal March 26, 1987. Kallal Depo. at 76–80.
2. The amendment to the Bank Credit Agreement was necessary even had A &

A not made the error. *Id.* at 80. *See id.* at 57–72 (amendment needed to reflect change in computation of fiscal year and increase in amount of debentures).

3. Amendment No. 1 to the Registration Statement was filed March 27, 1987. *Id.* at 56.

While the above facts are certainly relevant, none are contested by New Clinton. *See* Plaintiffs' Response to Defendant's Post–Hearing Reply Brief on Disqualification at 5. As stated earlier DR 5–102(A) provides an attorney may testify for his client on an undisputed issue. Because New Clinton does not contest Kallal's recollections, the testimony can in no way be prejudicial to New Clinton.

A & A also claims it should be allowed to use Kallal to prove the amendment to the bank credit agreement delayed the filing of Amendment No. 1. On this subject, Kallal's testimony is of no use to A & A, as Kallal simply does not take a position or assert an opinion on the subject. Instead, Kallal said A & A's error "may have" delayed execution of the amendment. Kallal Depo. at 80. He could not give any specific facts supporting New Clinton's claim of delay and he could not identify anyone who had told him that A & A's revision caused any delay. *Id.* at 80–84. All he could relate as to the cause of delay was the fact that "both items [the bank amendment and A & A recalculations] were on the table at the same time." *Id.* at 82. Kallal's lack of personal knowledge establishes that his deposition testimony is simply not relevant to A & A's claims, because it is not probative of any fact at issue.

Moreover, New Clinton will no doubt use other witnesses, more central to the amendment process (such as the accountants or bank personnel) to establish the cause for delay. *See e.g.,* Affidavit of Susan M. Scribner (May 12, 1988). A & A will then have ample opportunity for cross-examination of these witnesses. Finally, members of the New York law firms Shearman & Sterling and Skadden, Arps, Slate, Meagher & Flom were also involved with the registration of the debentures. Tr. at 16.

Any of those attorneys may more precisely recollect the events in question.

## CONCLUSION

Based on the foregoing legal standards and factual findings, the court is not convinced by A & A that Kallal ought to be called as a witness for New Clinton or that he should be called as a witness by A & A to the detriment of New Clinton. Kallal's testimony is either uncontested, or not sufficiently precise to be probative of an important issue. A & A's motion to disqualify Sutherland Asbill from the representation of New Clinton in this matter is hereby denied.

IT IS SO ORDERED.