**NORMAN NORELL, INC. and Marlin Enterprises, Ltd., Plaintiffs,**

v.

**FEDERATED DEPARTMENT STORES, INC., Defendant.**

No. 77 Civ. 1341 (CHT).

United States District Court, S. D. New York.

April 18, 1978.

8. Leaving out inflation or deflation factors. *See* Part IV, *supra.*

Manning & Carey, New York City, for plaintiffs; Richard deY. Manning, New York City, of counsel.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant; Michael A. Cardozo, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

The Court has before it a motion to disqualify plaintiffs' counsel on the grounds that continued representation by it of Norman Norell, Inc. and Marlin Enterprises Ltd. (hereinafter referred to as "Norell") would violate Disciplinary Rules ("DR") 5–101(B) and 5–102(A) of the Code of Professional Responsibility. The text of the rules is set out in the margin;[1] in brief they require, with certain caveats, withdrawal of an attorney from participation in a case when "it is obvious that he or a lawyer in his firm ought to be called as a witness." The action between these parties involves Norell's complaint that I. Magnin & Co. ("Magnin"), a division of the named defendant Federated Department Stores, Inc., unlawfully demanded to be the exclusive retailer in the western United States for the ladies' garments designed and manufactured by Norell and that as a result of this coerced "exclusive" Norell was damaged in the amount of $2,600,000 and forced to go out of business. Norell's claims are brought under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and under N.Y.Gen.Bus.L. § 340, likewise a proscription against restraint of trade. There is a third, minor claim for an account stated. For the following reasons the motion to disqualify counsel is granted in part and denied in part.

The instant motion arises from the fact that Richard deY. Manning ("Manning"), a member of the law firm of Manning & Carey, attorneys for Norell, is also plaintiffs' board chairman, and has been since 1974. Plaintiffs' Amended Answers to De-

1. DR 5–101 . . . .

B. A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
1. If the testimony will relate solely to an uncontested matter.
2. If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
3. If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
4. As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

DR 5–102 . . . .

A. If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

fendant's First Set of Interrogatories ("Interrogatories"), Answer No. 1. Designer Norman Norell, once sole stockholder in the company that bore his name, died in 1972. He provided by will that the company stock be placed in trust and the business continued under the aegis of Manning as trustee and as officer of the ongoing firm. The continuing venture did not thrive, and business was terminated in 1976; the firm has considerable remaining financial liability and "its assets consist of cash of approximately $15,000 plus the value of this litigation." Affidavit of Richard deY. Manning, sworn to December 13, 1977, at 9 ("Manning Affidavit").

After Norman Norell's death it was apparently Manning who actively conducted the Norell business affairs. He is currently the only officer of the still-extant corporation and has provided answers in whole or in part to 44 of the 55 interrogatories propounded by the defendant. These cover such subjects as the relevant market for Norell merchandise, the sales made to Magnin, the sales purportedly foreclosed by the alleged exclusive, damages to Norell and the terms of the alleged exclusive and purported duress. For example, on the last matter Manning states that on August 20, 1973 he telephoned a representative of Magnin and unavailingly complained that the Magnin west coast exclusive was extremely detrimental to the Norell business; further that on November 6, 1975 he and two representatives of Magnin again disputed the exclusive and Magnin reiterated that it would not consider competition for retail sales of Norell merchandise in its marketing area, threatening to withdraw business from Norell altogether if the exclusive were not maintained. Interrogatories, Answer No. 18.

In support of its motion to disqualify the Manning firm, defendant has seized on Manning's answers to the interrogatories, asserting that they reveal his unique personal knowledge of Norell's affairs and of the alleged violations such that Manning not only "ought to be" but in all probability *will* be Norell's witness-in-chief. Defendant particularly emphasizes that as Man-

ning was apparently plaintiffs' sole representative at the reported conversations dealing with the equity of the exclusive and Magnin's insistence upon it, he is the only witness who could refute defendant's version of the relationship between the parties which is, quite naturally, utterly at odds with the plaintiffs'. In its answer, defendant has characterized the Norell-Magnin course of dealing as, alternatively, nonexclusive or exclusive by mutual agreement or at the behest of and for the benefit of Norell and in all events "reasonable" and outside the purview of antitrust liability.

■ In his opposition to the motion to disqualify, Manning has asserted that the motion is at best premature "because there has been no showing whatsoever that Manning will be required to give any testimony." Manning Affidavit 1. This is not the operative test for possible invocation of the disciplinary rule: the standard is not "will be called" but "ought to be called" and that rule clearly obtains in this circuit. *J. P. Foley & Co., Inc. v. Vanderbilt*, 523 F.2d 1357, 1359 (2d Cir. 1975).

■ There is strong evidence that Manning "ought to" be called in behalf of Norell in this antitrust case. On the one hand, defendant may maintain that no exclusive retail agreement existed. In that event, Manning may well be needed to buttress the contrary position which is otherwise supported only by brief affirmations from two others once connected with Norell— Sidney Auerbach, former vice president, and Edna Sullivan, former salesperson. Interrogatories, Answer No. 18. On the other hand, defendant may choose to base its case on the voluntary and reasonable nature of an exclusive marketing arrangement between the parties, for it is clearly the law that exclusive dealing contracts are not violative of antitrust laws per se, *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961); *Susser v. Carvel Corp.*, 332 F.2d 505 (2d Cir. 1964), and it is the traditional "rule of reason" which must be applied to determine if any unlawful trade restraint did exist. *White*

*Motor Co. v. United States*, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963). Should defendant adopt this argument—or should the exclusive be shown without resort to Manning's testimony—it is of real significance that neither Ms. Sullivan nor Mr. Auerbach purports to have knowledge of the terms or the voluntariness of the exclusive, and it appears that Manning's testimony ought to be given at least on the issue of possible economic coercion, if not on the existence of the exclusive itself.

[3] Moreover, Manning labors under a misapprehension when he states that should defendant argue the "reasonableness" of the arrangement between it and Norell, then "the entire case will be in the lap of the defense." Manning Affidavit 3. "The burden of proof in antitrust cases remains with the plaintiff, deriving such help as may be available in the circumstances from particularized rules articulated by law— such as the *per se* doctrine." *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 374 n.5, 87 S.Ct. 1856, 1863, 18 L.Ed.2d 1249.[2] There being no *per se* violation in this case, it will be up to plaintiff to demonstrate that the rule of reason has been violated by the putative exclusive dealing agreement. To decide such a case "[t]he court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable." *Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918) (Brandeis, J.). Manning has shown by his past and current positions in plaintiffs' organizational hierarchy and through his answers to defendant's interrogatories that he is the one who has particular knowledge of all these facts from Norell's viewpoint; it is apparent that he "ought" to testify.

However, Manning argues alternatively that the "hardship" exception in DR 5–102 should bar application of the rule in this case. In full text this exception provides

that a lawyer shall not be required to refuse to represent a client for whom he ought to be a witness if such refusal "would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm to the client." DR 5–101(B)(4). Manning states that he and his firm have been acting since 1974 without compensation in order to husband the assets of the Norell estate; that they will be compensated in this suit only if victorious; that to find other counsel experienced in dress-business litigation to oppose on a contingent fee basis the "powerful" defendant would "probably be impossible." Manning Affidavit 10. Manning offers no support for the proposition that only counsel experienced in "the dress business" would be competent to handle this litigation, nor has he stated why another firm could not be retained on a contingency basis. Moreover, the "distinctive value" of the Manning firm to Norell would appear not to be as counsel but as witness, the very role barred by DR 5–102.

Perhaps recognizing how neatly his position fits the proscriptions of the Code, Manning has suggested that if disqualification is required it be partial, that is, that the Manning firm be allowed to continue as pretrial counsel and "trial counsel . . . be obtained who can handle the actual trial, so as to avoid the problem of Manning being a witness and also arguing his own credibility before a jury." Manning Affidavit 10. It is this suggestion which the Court accepts, in deference to the admonition that any motion to disqualify an attorney requires "judicial scrutiny to prevent literalism from possibly overcoming substantial justice to the parties." *Foley, supra*, 523 F.2d at 1360 (Gurfein, J. concurring). As Judge Gurfein noted, the disciplinary rules are not statutory; we are cautioned that

[w]hen we agree that the Code applies in an equitable manner to a matter before us, we should not hesitate to enforce it with vigor. When we find an area of

---

**2.** Nothing in *Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), which overruled *Schwinn* on substantive antitrust law, suggests that this burden has been shifted.

uncertainty, we must use our judicial process to make our own decision in the interests of justice to all concerned.

See *International Electronics Corp. v. Flanzer,* 527 F.2d 1288 (2d Cir. 1975) (Gurfein, J.); *U. S. ex rel. Sheldon Electric Co. v. Blackhawk Heating & Plumbing Co.,* 423 F.Supp. 486 (S.D.N.Y.1976).

Examination of the basis for the lawyer-witness prohibition and a closer look at Norell's interest in being represented by the Manning firm reveal that the compromise suggested represents the best reconciliation among the competing interests of the plaintiffs, the defendant and the judicial system. In *International Electronics Corp. v. Flanzer, supra,* 527 F.2d at 1294, the court of appeals explained in the following manner the rationale for disqualification of counsel who is prospectively a material witness:

> The ultimate justification for the disqualification rule . . . [is] that the public might think that the lawyer is distorting the truth for the sake of his client. Another argument for disqualification is that the lawyer-witness will vouch for his own credibility in summing up to the jury—a powerful means of support for his own credibility. . . . [T]he argument that [this opportunity] is unfair to the opponent has some merit. It is difficult, indeed, to cross-examine a witness who is also an adversary *counsel* concerning matters of fact, and, more particularly, on matters impeaching his credibility, within the bounds of propriety and courtesy owed to professional colleagues.

The concerns there expressed are for the public perception of justice done and probity preserved and for neutralization of any possible unfair advantage *at trial.* By this standard there can be no cavil if Manning acts as counsel *prior* to trial but is barred from dual participation *at* trial. Because in a very real sense Manning is both party and attorney in this action, the Court finds that his position is closely akin to that of a party acting pro se, a role sanctioned by statute without restriction upon the freedom to testify and to advocate as well. 28 U.S.C. § 1654. *Cf. International Electronics Corp.,*

*supra,* 527 F.2d at 1295. The total loss of Manning's services as attorney to himself in effect as client would represent the loss of "distinctive" services indeed, for it can be expected that he will pursue this matter with unique loyalty and diligence. Nevertheless, Manning is an attorney and as such he is bound by the Code. The compromise he has suggested hews to the Code's ethical spirit without violence to "the client's" wishes, and it serves the interests of substantial justice to both parties in this action.

Therefore it is ordered that the Manning firm be disqualified from acting as trial counsel for plaintiffs but be permitted to pursue pretrial activities. When the case is ready for trial, the firm of Manning & Carey is ordered to designate in the note of issue or pretrial order, as the case may be, the individual or firm which will represent plaintiffs at trial and to take no active role in the courtroom conduct of the case.

So ordered.