**Peter MUNK, Plaintiff,**

v.

**GOLDOME NATIONAL CORPORA-TION and Golden Buffalo Inc., Defendants.**

**No. 86 Civ. 9612 (DNE).**

United States District Court, S.D. New York.

Oct. 25, 1988.

cluded half ownership of 745 Fifth Avenue, which had a mortgage of $13,000,000. This action arises out of the parties conflicting understanding as to whether one-half of the mortgage on 745 Fifth Avenue, which totalled of $6,500,000, was to be included in the purchase price of the real estate portfolio. Munk claims that the total purchase price was to be $145,000,000, free of all encumbrances. GCI claims that the contract did not provide for a credit for the mortgage of 745 Fifth Avenue and therefore the total price of the transaction was to be $151,500,000.

The deal was scheduled to close on January 29, 1985. The firm of Breed Abbott & Morgan ("Breed Abbott") represented Transamerica during the course of the transaction. Plaintiff claims that, days before the closing, members of the Proskauer firm notified Breed Abbott of a $6,500,000 increase in the price of the deal. According to plaintiff, Proskauer made the same demand at the scheduled closing and refused to close the deal without payment of the increase. Transamerica agreed to payment of the increase, telling GCI and Proskauer that they had no reasonable alternative but to close at the increased price. Nevertheless, Transamerica also informed GCI that it would sue to retrieve the money after the closing. Proskauer then asked Transamerica to sign a waiver relinquishing any claims against the defendant, which Transamerica refused to sign. On agreement of the parties, the closing was postponed one day to enable Transamerica to assemble the additional $6,500,000.

Munk asserts that Proskauer attorneys personally conveyed the demands for the increased price and for the waiver. Munk further claims that Proskauer engaged in a number of negotiations with Breed Abbott, that Proskauer drafted the contract, which exceeded one-hundred pages, and that Proskauer was present at all critical meetings between the parties. Consequently, the plaintiff concludes that the Proskauer attorneys' who participated in the Transamerica deal, James Fuld and Yale Gelman, would be key witnesses at trial regarding the events leading up to and including the

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y. (Robert E. Goldman, of counsel), for plaintiff.

Proskauer Rose Goetz & Mendelsohn, New York City (Larry M. Lavinsky, of counsel), for defendants.

## MEMORANDUM AND ORDER

EDELSTEIN, District Judge:

Plaintiff, Peter Munk ("Munk"), has filed this action to recover $6,500,000 for breach of contract, conversion, and duress. Defendant, Goldome Capital Investment, Inc. ("GCI"), is represented in this action by the firm of Proskauer, Rose, Goetz & Mendelsohn ("Proskauer"). Munk seeks, pursuant to this court's supervisory power and DR 5-102(A) of the Code of Professional Responsibility, an order disqualifying Proskauer from representing GCI in this action. For the reasons set forth below, Munk's motion is granted.

## BACKGROUND

In order to purchase GCI's real estate portfolio, Peter Munk entered with two individuals, John Holmes and John Roberts, into three separate partnerships under the general name "Transamerica." Initially, the deal was structured as a real estate acquisition, but was subsequently changed to a stock transaction. The portfolio in-

closing and their understanding of the total purchase price of the transaction.

GCI, on the other hand, claims that Craig Stapleton, a real estate consultant, and Saperston & Day, the firm's general counsel in Buffalo, were the primary negotiators, not Proskauer. According to H. Eugene Richards, President and Director of GCI, any demands Proskauer made were at his direction. *See* Affidavit of H. Eugene Richards, President of GCI Affidavit ¶ 18. GCI also claims that there are other witnesses to material events more qualified to testify than the Proskauer attorneys. According to GCI, Proskauer's main role was drafting the contract based on decisions made by GCI, drafting all documents necessary to close the deal, and advising GCI concerning the tax and legal consequences of the terms of the contract. *See* Affidavit of Craig Stapelton, Consultant for GCI ¶ 4. GCI thus concludes that testimony by the Proskauer attorney's is unnecessary.

## DISCUSSION

A. *The Standard for Disqualification: DR 5–102(A)*

The Code of Professional Responsibility, which governs the conduct of all attorneys provides in DR 5–102(A)[1]:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he

may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(b)(1) through (4).[2]

DR 5–102(A) operates to protect the interests of the plaintiff, the interests of the adverse party, and the reputation of the legal profession. *See generally* 6 J. Wigmore, Evidence § 1911 (Chadbourn rev. ed. 1976). Ethical Consideration 5–9 ("EC–5–9") sets forth these interests:

> Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of the advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

DR 5–102(A) implicitly recognizes the pressures facing an attorney who is a potential witness. For instance, he or his firm might be anxious to participate in the litigation, or the client might insist that counsel continue its representation. *See MacArthur v. Bank of New York*, 524 F.Supp. 1205, 1208 (S.D.N.Y.1981). He therefore might not step aside as counsel to testify as a witness, even if it were in his

1. The Code of Professional Responsibility as adopted by the New York State Bar Association is codified in the Appendix to the New York Judiciary Law (McKinneys)

2. None of the circumstances enumerated in DR 5–101(b)(1) through (4) are applicable in the instant motion. DR 5–101(B)(1) through (4) provides: A lawyer shall not accept employment contemplated or pending litigation if he knows or it is obvious that he or a lawyer of his firm ought to be called as a witness, except he may undertake the employment and he or a lawyer in his firm may testify: (1) If the testimony will relate solely to an uncontested matter. (2) If the testimony will relate solely to a matter formality and there is no reason to believe that

substantial evidence will be offered in opposition to the testimony. (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client. (4) As to any matter, if refusal would work a substantial hardship on the client because distinctive value of the lawyer or his firm as counsel in the particular case.

The defendant argues in its papers that an amendment to DR 5–102(A) is being contemplated which would eliminate the language excluding the firm of an attorney who ought to testify as a witness. The rule has not yet been so amended, and accordingly the court will apply the current standard.

client's best interest. Consequently, when faced with the choice of advocacy or testimony, the law favors testimony: "[W]here the question [of testimony versus representation] arises doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." EC 5–10.

The party moving to disqualify opposing counsel bears the burden of proof. *S & S Hotel Ventures v. 777 S.H. Corp.*, 69 N.Y. 2d 437, 515 N.Y.S.2d 735, 739, 508 N.E.2d 647, 650–51 (Ct.App.1987). In deciding a disqualification motion, the court must weigh the policies and interests underlying DR 5–102(A) with the substantive rights of the litigant and potential harm done to him by disqualifying his counsel. See *MacArthur, supra*, 524 F.Supp. 1205; *S & S Hotel Ventures v. 777 S.H. Corp.*, 69 N.Y. 2d 437, 515 N.Y.S.2d 735, 508 N.E.2d 647 (Ct.App.1987).

The test as to whether an attorney ought to testify has been described in *MacArthur* as "whether the attorney's testimony could be significantly useful to his client." *MacArthur, supra*, 524 F.Supp. at 1208. Defendant contends that the Proskauer attorneys' testimony is unnecessary and would be cumulative of other more qualified witnesses testimony.[3] The question then is whether the Proskauer attorneys' testimony will be sufficiently cumulative so as to render it not significant. *See MacArthur, supra*, 524 F.Supp. at 1209. Despite defendant's contentions, the testimony of the Proskauer attorneys, Fuld and Gelman, could be significantly useful to either GCI or Munk for two reasons. First, the plaintiff's and defendant's version of Proskauer's role in the events leading up to and including the closing vary materially. Clarifying these events and the roles of the various participants is crucial to the adjudication of this case. The Proskauer attorneys are clearly the most capable witnesses to describe their own role in these events. As such, their testimony not only would not be cumulative, but rather it might be otherwise unobtainable.

Second, given defendant's version of Proskauer's role in the deal, Fuld and Gelman ought to be called as witnesses to describe their understanding of the total purchase price of the real estate portfolio as counsel for GCI and the drafters of the contract. The plaintiff plans to call Breed Abbott, who represented Transamerica during the transaction in question, to testify as to their understanding that the purchase price was to be $145,000,000 free of all encumbrances. *See* Affidavit of Robert S. Greenbaum, Member of Breed Abbott ¶ 3, Joseph W. Schmidt, Member of Breed Abbott ¶ 3, and Frederic L. Altschuler, Member of Breed Abbott ¶ 3. Consequently, as Breed Abbott's opposing counsel, Proskauer's testimony as to their understanding of the overall price could be extremely important to the defendant. Absence of such testimony may greatly influence a jury. Defendant's counsel should not be put in the position of foregoing significantly useful, if not necessary, testimony so as not to risk a mistrial for the reasons addressed in DR 5–102(A).

### B. *Hardship to the Defendant*

In considering a disqualification motion, the court also must balance the interests codified in DR 5–102(A) against the substantive rights and potential harm to the client. *General Mill Supply Co. v. SCA Services Inc.*, 505 F.Supp. 1093, 1096 (E.D. Mich.1981), *aff'd*, 697 F.2d 704 (6th Cir. 1982). The policies embodied in the rule dictate that a client may not decide to waive his attorney's testimony in order to keep him on as counsel:

Nor may the client waive the rule's protection by promising not to call the attorney as a witness. The ostensible paternalism of disregarding such waivers is justified by the circumstances in which the problem arises. The client will generally be reluctant to forego the assistance of familiar counsel or to incur the expense and inconvenience of retaining another lawyer. The most serious

---

**3.** EC 5–10 provides: "It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue."

breaches of this rule, in which an attorney has become intimately involved in the subject matter of the dispute, will often be the very situations in which the withdrawal is most burdensome. Moreover, the party will generally be guided in its decision by the very attorney whose continued representation is at issue. At the same time, the attorney will be reluctant to jeopardize good relations with the client and may—against his better judgment—defer to the client's desire for representation.

*MacArthur, supra,* 524 F.Supp. at 1209.

Indeed defendant may suffer some hardship because of its familiarity with Proskauer and because of the effort involved in finding new counsel. Such hardship, however, is greatly outweighed by the potential significance of the Proskauer attorney's testimony to their client's defense and the potential problems such testimony poses to the client, to opposing counsel, and to the profession.

In considering the extent of hardship DR 5–102(B) provides that the court must prevent DR 5–102(A) from being used as a trial tactic. See *J.P. Foley & Co., Inc. v. Vanderbilt,* 523 F.2d 1357, 1360 (2d Cir. 1975) (Gurfein, J. concurring). Such a danger typically exists when a defendant seeking to delay a trial or to increase the costs of litigation for his opponent makes a motion to disqualify plaintiff's counsel. Here, the plaintiff gains nothing by the delay or added expense of motion practice to the defendant, nor does the plaintiff gain any tactical advantage from disqualifying Proskauer. Defendant has a substantive right to choose its own counsel, but not when that choice conflicts with the ethical concerns presented in the instant action.

### C. *Timing of Disqualification*

GCI contends Proskauer should be allowed to conduct pretrial discovery in this case. In deciding whether to allow disqualified counsel to conduct pretrial proceedings, the court must consider the best interests of the plaintiff, the defendant, and the judicial system. See *Norman Norell, Inc. v. Federated Dept. Stores,* 450 F.Supp. 127 (S.D.N.Y.1978). These interests are best served in the instant action by disqualifying Proskauer from pretrial proceedings as well as the trial itself. Many of the same concerns raised by Proskauer's representation of the defendant at trial may arise if Proskauer is allowed to conduct discovery. In *International Electronics Corp. v. Flanzer,* 527 F.2d 1288 (2d Cir.1975), the court noted that "the ultimate justification for the disqualification rule … [is] that the public might think that the lawyer is distorting the truth for the sake of his client." *Id.* at 1294. Such a danger would most certainly exist if Proskauer were allowed to conduct discovery. Proskauer's conduct as defendant's attorney is an issue in the case. If Proskauer were allowed to conduct discovery, they would take depositions, preside at others, and most notably sit at the side of their partners Fuld and Gelman while they were being deposed. If any of these depositions are introduced at trial, the role of the Proskauer firm will come into question. A jury may very well draw the very adverse inferences that DR 5–102(A) seeks to prevent and the public might make the inference, no matter how false, that Proskauer somehow conducted discovery so as to protect the image of the firm. Moreover, defendant will incur no additional burden by seeking counsel before discovery begins rather than after it is concluded. In fact, it appears more economical to seek new counsel early in the litigation rather than late to afford new counsel an opportunity to prepare. Further, seeking new counsel now will avoid any possible delay at the time of trial.

### *Conclusion*

Accordingly, the plaintiff's motion to disqualify defendant's counsel, Proskauer Rose Goetz & Mendelsohn pursuant to DR 5–102(A) is granted.

SO ORDERED.