James PARETTI, Plaintiff,

v.

CAVALIER LABEL COMPANY, INC., Bernard Shur and Harold Shur, Defendants.

No. 87 Civ. 2088 (MBM).

United States District Court, S.D. New York.

Aug. 8, 1989.

Kenneth A. Zitter, New York City, for plaintiff.

Martin I. Saperstein, Goodman & Saperstein, Garden City, N.Y., for defendants.

MUKASEY, District Judge.

Diversity plaintiff James Paretti moves to disqualify Martin I. Saperstein from acting as trial counsel for defendants Bernard and Harold Shur and Cavalier Label Company, Inc. American Bar Ass'n Model Code of Prof. Resp. D.R. 5–102(A); 5–101(B) (codified at N.Y.Jud. Law App. at 451–54 (McKinney 1975)). For the reasons given below, Paretti's motion is denied.

A prior Opinion and Order gives the factual background to this matter, familiarity with which is assumed. *Paretti v. Cavalier Label Co.,* 702 F.Supp. 81 (S.D.N.Y.

1988). Briefly, Paretti alleges that the Shurs reneged on their promise to make him a partner in their clothing business, which Paretti calls Young Rebels. Paretti sues for breach of contract and a partnership accounting, and seeks a jury trial. Defendants assert that they are shareholders in Cavalier, and that they sought unsuccessfully to have Paretti purchase Harold Shur's shares.

Shortly after this action began, Paretti moved to disqualify Saperstein's firm, Goodman & Saperstein. Judge Sand, to whom this case was then assigned, denied the motion with leave to renew at the close of discovery. The case then was reassigned.

At the end of discovery Saperstein's partner Stanley R. Goodman withdrew as trial counsel. Goodman reasoned in his May 26, 1988 letter to the court that his testimony would be "necessary to the defense of [his clients'] case...." Paretti now moves to disqualify Saperstein, asserting that Saperstein cannot act as trial counsel either because Saperstein ought to testify, or alternatively, because Saperstein's partner Goodman will testify at the trial.

■ The Model Code, which all parties interpret as supporting their respective positions, provides that Saperstein must be disqualified from acting as trial counsel if "...it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client...." D.R. 5–102(A). Although the Model Code does not have the force of legislation or decisional law, it provides guidance on issues of professional conduct. *Armstrong v. McAlpin,* 625 F.2d 433, 446 n. 26 (2d Cir.1980) (*en banc*), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981); *S & S Hotel Ventures Ltd. Partnership. v. 777 S.H. Corp.,* 69 N.Y.2d 437, 443, 508 N.E.2d 647, 650, 515 N.Y.S.2d 735, 738 (1987); *accord Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d 1384, 1386 (2d Cir.1976); *J.P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357, 1359–60 (2d Cir.1975) (Gurfein, J., concurring).

Because attorney disqualification is a severe sanction, Saperstein should not be dis-

qualified unless it is "likely that [his] testimony ... is necessary." *777 S.H. Corp.,* 69 N.Y.2d at 446, 508 N.E.2d at 651, 515 N.Y.S.2d at 739 (citing *Vanderbilt,* 523 F.2d at 1359); *accord Keoseian v. Von Kaulbach,* 707 F.Supp. 150, 154 (S.D.N.Y. 1989) (same); *see MacArthur v. Bank of N.Y.,* 524 F.Supp. 1205, 1208 (S.D.N.Y. 1981) (a lawyer must withdraw as trial counsel if his testimony could be significantly useful to a client); *see also Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir.1989) (dictum).

"A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence." *777 S.H. Corp.,* 69 N.Y.2d at 446, 508 N.E.2d at 651, 515 N.Y.S.2d at 739 (citations omitted). In explaining when the availability of other evidence would relieve a lawyer of his duty to withdraw, Ethical Consideration 5–10 (codified at N.Y.Jud. Law App. at 444 (McKinney 1975)) indicates that a lawyer who could provide only cumulative testimony may act as trial counsel. *Munk v. Goldome Nat'l Corp.,* 697 F.Supp. 784, 787 & n. 3 (S.D.N.Y.1988); *Bank of N.Y.,* 524 F.Supp. at 1208–09. Similarly, a lawyer who merely observed the negotiations and reviewed draft agreements need not be disqualified. *American Special Risk Ins. Co. v. Delta Am. Re Ins. Co.,* 634 F.Supp. 112, 122 (S.D.N.Y.1986). However, when a lawyer drafts an ambiguous document for a layperson, the lawyer may be the only witness capable of explaining what a clause means or why it appears. In that circumstance, the lawyer ought to testify on behalf of his client. *See In re Will of Bartoli,* 137 Misc.2d 499, 501, 521 N.Y.S.2d 392, 394 (Surr. Ct. Nassau County 1987), *aff'd mem.,* 143 A.D.2d 830, 533 N.Y.S.2d 324 (2d Dep't 1988). In a more extreme example, if a lawyer negotiates, executes, and administers a contract, and is the key witness at trial, then he must be disqualified. *Acme Analgesics, Ltd. v. Lemmon Co.,* 602 F.Supp. 306 (S.D.N.Y.1985) (Weinfeld, J.).

■ Although doubts should be resolved in favor of disqualification, *Cheng v. GAF*

*Corp.*, 631 F.2d 1052, 1059 (2d Cir.1980) (citing, *inter alia, Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975)), *vacated on other grounds and remanded*, 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981), the party seeking disqualification must carry a "heavy burden," *Vegetable Kingdom, Inc. v. Katzen*, 653 F.Supp. 917, 922 (N.D.N.Y.1987), and meet a "high standard of proof" before a lawyer is disqualified. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983) (citing *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir.1978)); *cf. Consolidated Theatres, Inc. v. Warner Bros. Cir. Mgmt. Corp.*, 216 F.2d 920, 924 (2d Cir.1954) (discussing *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265 (S.D. N.Y.1953) (Weinfeld, J.) and holding that the evidence at least must be sufficient to support a reasonable inference that the Canons have been violated). Mere speculation will not suffice. *International Union v. National Caucus of Labor Comms.*, 466 F.Supp. 564, 570 (S.D.N.Y.), *aff'd mem.*, 607 F.2d 996 (2d Cir.), *cert. denied*, 444 U.S. 839, 100 S.Ct. 77, 62 L.Ed.2d 51 (1979).

■ Saperstein attended three meetings that Paretti argues he must testify about. The first meeting was held in July 1986 and was attended by Saperstein, the Shur brothers, two Cavalier accountants, Goodman, and for a short time, Paretti. The second meeting was held in September 1986, and was attended by Saperstein, Goodman, and Paretti's corporate counsel. The third meeting was held in October 1986, and was attended by Saperstein, the Shur brothers, Goodman, Paretti, and Paretti's corporate counsel. Paretti argues that the deal was structured at each of these meetings. He concludes therefore that the participants must know whether Bernard Shur was selling his interest in a corporation or in a partnership. Saperstein's testimony might be necessary if there were evidence that he said or did anything relevant to this issue at these meetings. However, there is no such evidence. Moreover, to the extent that a party made an admission at the July and October meetings, there are five different persons who can testify about what the party

said or did. Therefore, Saperstein's testimony would be cumulative. As for the September meeting, Saperstein has already admitted that there are no conflicts between his recollection of the meeting and the recollection of Paretti's corporate lawyer. Affidavit of Martin I. Saperstein ¶ 7. Therefore, his testimony about this meeting would be mere surplusage.

Saperstein also participated in drafting the first two versions of the shareholders and redemption agreements, but those agreements eventually were redrafted at least once more. There has been no evidence about how these agreements changed from draft to draft, or which provisions Saperstein actually wrote. Therefore, it is hard to gauge just how much of the documents reflect his understanding of the transaction. However, the unexecuted documents presumably speak for themselves. Moreover, to the extent that the portions Saperstein wrote are ambiguous, the testimony of the Shur brothers, and not Saperstein, would be the best evidence of what was intended. In other words, Saperstein's testimony would be cumulative.

In sum, Paretti has not met the high standard of proof necessary to show that Saperstein ought to be a witness for defendants. Accordingly, Paretti's motion to disqualify Saperstein as a witness is denied.

■ Paretti also moves for vicarious disqualification of Saperstein as trial counsel. The Model Code provides in relevant part that when a lawyer ought to be a witness for a client, the lawyer "shall withdraw from conduct of the trial and [the lawyer's] firm, if any, shall not continue representation in the trial. . . ." D.R. 5–102(A). Paretti argues that because Goodman withdrew as trial counsel, Goodman's partner Saperstein must withdraw as well. As Paretti explains, "[s]imply as a result of his association with . . . Goodman, who will be a witness . . . Saperstein cannot act as trial counsel." Memorandum of Law in Support of Plaintiff's Motion to Disqualify Martin Saperstein as Trial Counsel at 4.

As an initial matter, violations of the Model Code, as literally read, should not result in removal of counsel unless the conduct "does ... violence to ... the fundamental values which the [C]anons were written to protect...." *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 271 (2d Cir.1975); see *McAlpin,* 625 F.2d at 444–45; *Bohack Corp. v. Gulf & Western Indus., Inc.,* 607 F.2d 258, 263–64 (2d Cir. 1979); *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979); *Freschi v. Grand Coal Venture,* 564 F.Supp. 414, 416–18 (S.D.N.Y.1983); *Norman Norell, Inc. v. Federated Dept. Stores,* 450 F.Supp. 127, 130–31 (S.D.N.Y.1978).

Many cases hold without elaboration that an entire firm is disqualified from representing a party if one lawyer in the firm is disqualified under D.R. 5–102(A). *E.g., Vanderbilt,* 523 F.2d at 1359; *Goldome Nat'l Corp.,* 697 F.Supp. at 786–87; *Two's Co. v. Transamerica Ins. Co.,* 653 F.Supp. 255, 259 (S.D.N.Y.1986); *Acme Analgesics, Ltd. v. Lemmon Co.,* 602 F.Supp. 306 (S.D.N.Y.1985) (Weinfeld, J.); *Bank of N.Y.,* 524 F.Supp. at 1211 (S.D.N.Y.1981); *Wood v. Beacon Factors Corp.,* 137 A.D.2d 752, 524 N.Y.S.2d 831 (2d Dep't 1988) (mem.op.); *Hitzig v. Borough–Tel Serv., Inc.,* 108 A.D.2d 677, 485 N.Y.S.2d 541 (1st Dep't 1985) (mem.op.); *Hempstead Bank v. Reliance Mortgage Corp.,* 81 A.D.2d 906, 439 N.Y.S.2d 202 (2d Dep't 1981) (mem.op.); *In re Will of Bartoli,* 137 Misc.2d at 501, 521 N.Y.S.2d at 394. The vicarious disqualification rule has been given various rationales, none of which have been adopted by Paretti. *Compare, e.g., United States v. Peng,* 602 F.Supp. 298, 301 (S.D.N.Y.) (dictum that rule prevents lawyer/witness from being impeached for bias), *aff'd on other grounds,* 766 F.2d 82, 86 (2d Cir. 1985), *with* American Bar Ass'n Comm'n on Evaluation of Prof. Standards, *Proposed Final Draft Model Rules of Prof. Conduct* at 150–51 (1981) (collecting authority) (client should be permitted to waive bias objection).

In some cases individual lawyers whose past activities are germane to the current litigation offer not to testify. *Peng,* 766 F.2d at 86; *United States v. McKeon,* 738 F.2d 26, 34–35 (2d Cir.1984); *United States v. Cunningham,* 672 F.2d 1064, 1074–75 (2d Cir.1982), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). When these attorneys have been disqualified, the focus has been on what would happen if an adverse witness were to testify about what the lawyer said or did. The main concern is that the lawyer's cross examination or summation to the jury would contain implicit, unsworn testimony about the lawyer's version of the conversation or events—testimony that the opposing party could not impeach effectively. *Peng,* 766 F.2d at 86, *aff'g* 602 F.Supp. at 301; *McKeon,* 738 F.2d at 34–35; *Cunningham,* 672 F.2d at 1074–75. Moreover, in cases where testimony comes from friendly witnesses, the main concern is that the lawyer will be arguing his own credibility to the jury. *E.g., North Shore Neurosurgical Group, P.C., v. Leivy,* 72 A.D.2d 598, 421 N.Y.S.2d 100 (2d Dep't 1979) (mem.op.); *accord Peng,* 766 F.2d at 86 & n. 1 (dictum); *see People v. Bonilla,* 101 Misc.2d 146, 420 N.Y.S.2d 665 (Sup.Ct. Bronx County 1979) (prosecutor arguing her own credibility to the jury is disqualified).

None of those concerns is present here. Paretti does not indicate that he will introduce testimony regarding what Saperstein said or did, primarily because it is irrelevant to resolving this controversy. Therefore, it is feasible for the parties to instruct their witnesses not to testify about any of Saperstein's activities without compromising their respective litigation strategies. Accordingly, the parties are ordered to avoid eliciting testimony regarding Saperstein's role in the negotiations, as peripheral as that role may be.

Other cases assert that D.R. 5–102(A) is designed primarily for when a lawyer acts as both an attorney and witness and when a trial counsel's law partner is a non-party witness. *In re Am. Cable Publications, Inc.,* 768 F.2d 1194, 1196 (10th Cir.1985) (citing *Bottaro v. Hatton Assocs.,* 680 F.2d 895, 897 (2d Cir.1982)). These cases explain that D.R. 5–102(A) is designed to avoid the public perception that the lawyer

as witness is distorting the truth for the sake of a client, or is enhancing his own credibility as an advocate by taking an oath as a witness, and is also designed to deny opposing counsel the unfair and difficult task of cross-examining an adversary and impeaching the adversary's credibility. *Hatton Assocs.*, 680 F.2d at 897 (discussing *International Elecs. Corp. v. Flanzer*, 527 F.2d 1288, 1294 (2d Cir.1975)). Saperstein will not be able to distort the truth or attempt to enhance his credibility because he will not testify. Although he does not explicitly so indicate, the only testimony he would offer is cumulative, which means he should have no occasion to testify. In addition, opposing counsel will still have the opportunity to cross-examine Goodman, who is not trial counsel, free of any unfairness or difficulty. Therefore, the reasoning behind these cases does not support vicarious disqualification in this case.

Paretti also seeks support from authority that holds that a firm cannot represent a client whom its lawyers will testify against. D.R. 5–102(B). This rule prevents a firm from choosing between the monetary interests of its client and its lawyers, *see Eurocom, S.A. v. Mahoney, Cohen & Co.*, 522 F.Supp. 1179, 1181 (S.D.N.Y.1981) (interpreting D.R. 5–101(B)), but that is not the situation here.

As these cases indicate, the rationale for the vicarious disqualification rule is enigmatic. Commentary has indicated that the rule is overbroad. *E.g.*, Note, *The Advocate–Witness Rule: If Z, Then X. But Why?*, 52 N.Y.U. L.Rev. 1365 (1977). The drafters of the American Bar Association's Model Code of Professional Responsibility agree, and indicate in Rule 3.7(b) that "[a] lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless [the advocate is] precluded from doing so by Rule[s] 1.7 or ... 1.9 [regarding conflict of interest]." The drafters indicate that in their opinion, vicarious disqualification ought to occur in relatively few cases, such as when a lawyer's testimony would be adverse to a client. *Proposed Final Draft Model Rules of Prof. Conduct* at 152. In advocating the replacement of D.R. 5–

102(A) with Rule 3.7(b), the New York State Bar Association argues that "[t]he change is consistent with the public policy of avoiding confusion between the lawyer's role as advocate and witness without unduly interfering with the client's ability to be represented by counsel of the client's choice." New York State Bar Ass'n, *Report of the Special Comm. to Consider Adoption of ABA Model Rules of Prof. Conduct* 21 (1984). Courts also have begun to reexamine the broad vicarious disqualification rule of D.R. 5–102(A). *Metromedia Co. v. Fugazy*, 87 Civ. 2597 (RLC), slip op. at 10–14, 1988 WL 140773 (S.D.N.Y. Dec. 28, 1988) (dictum); *777 S.H. Corp.*, 69 N.Y.2d at 443 & n. 3, 508 N.E.2d at 650 & n. 3, 515 N.Y.S.2d 738 & n. 3 (dictum); *U.S. Risk Managers, Inc. v. Gershuny*, 141 A.D.2d 389, 529 N.Y.S.2d 321 (1st Dep't 1988) (mem.op.) (dictum).

Therefore, although this case falls within the literal reach of D.R. 5–102(A), Saperstein's disqualification would merely apply the rule where no rationale for its application exists. When the rationale for a rule does not apply, neither, if possible, should the rule. *Cf. United States v. Manton*, 107 F.2d 834, 845 (2d Cir.1939) (Sutherland, J.), *cert. denied*, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1940). If a contrary result were reached, defendants' right to be represented by counsel of choice would be sacrificed and form would be elevated over substance and reason. As Judge Gurfein observed, judges "must use [the] judicial process to make [a] decision in the interests of justice to all concerned." *Vanderbilt*, 523 F.2d at 1360 (Gurfein, J., concurring); *accord Grand Coal Venture*, 564 F.Supp. at 417. To disqualify Saperstein in this case would do justice for no one. Therefore, the motion to disqualify Saperstein as trial counsel is denied.

SO ORDERED.