**In re AMERICAN MOTOR CLUB, INC., Debtor.**

**AMERICAN MOTOR CLUB, INC., Plaintiff,**

**v.**

**Nicholas NEU, David Gershuny and Jacqueline Couch, as Executor of the Estate of Dante Senise, Defendants.**

**Bankruptcy No. 887–70763–260. Adv. No. 189–0044.**

United States Bankruptcy Court, E.D. New York.

Sept. 28, 1990.

As Amended Oct. 18, 1990.

Berkman, Henoch, Peterson, Kadin, Peddy & Scarcella by Louis A. Scarcella, Garden City, N.Y., for debtor.

Philip Irwin Aaron (Michael Brofman, of counsel), Syosset, N.Y., for Creditors' Committee.

Rosner & Goodman by Andrew J. Goodman, New York City, for creditor.

## DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

American Motor Club, the Debtor in Possession (hereinafter the "Debtor" or "AMC") moves to disqualify Rosner & Goodman from acting as trial counsel for defendants Nicholas Neu ("Neu") and David Gershuny ("Gershuny") on two grounds; first, the firm previously represented the Debtor; second, a member of the firm is likely to be called as a witness at trial. For the reasons stated below, the motion is denied.

## FACTS

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 19, 1987. In April 1989, the

Debtor commenced the within adversary proceeding against Nicholas Neu, David Gershuny and Jacqueline Couch, as Executor for the Estate of Dante Senise, seeking payment on certain promissory notes (the "Notes") executed and delivered by the defendants to the Debtor.

### a. Facts of the Underlying Action.

It is alleged, *inter alia* in the complaint, that on or about May 2, 1986, Neu, a former Officer and Director of the Debtor, executed and delivered to the Debtor two promissory notes: one in the sum of $300,-000.00, payable on the earlier of January 31, 1987, and a second in the sum of $305,-000.00 payable at maturity on January 31, 1987. The Debtor also claims that Gershuny, President of the parent corporation of the Debtor, executed and delivered two promissory notes, the first executed on May 2, 1986 in the amount of $180,000.00, the second executed on or about May 30, 1986, in the sum of $181,852.00. The Debtor complains that Neu and Gershuny have refused to pay the said Notes.

Both Neu and Gershuny contend that no payment on the Notes is due because they were fraudulently induced to sign the Notes, the Notes are wholly unsupported by any consideration, the Notes are void as illegal and the Notes were obtained by duress and coercion.

Neu contends that prior to January 1987 he received payments of $300,000.00 and $305,000.00 as commissions and compensation in consideration of services and shares of stock. Likewise, Gershuny alleges that prior to January 1987, he received payments of $181,852 as commissions and compensation in consideration of services.

Both defendants maintain that in or about January or early February of 1987, Sam Ford ("Ford"), acting as the controlling party and designee of International Tillex Enterprises, Ltd. ("Tillex"), Debtor's ultimate parent, requested Neu and Gershuny to sign the Notes here in issue to enable Tillex to represent prior compensation as loans on its financial statements to be disseminated to the public. Gershuny claims that he was assured by Ford that the indebtedness evidenced by the Notes would be forgiven thereafter.

Neu claims that at a meeting in New York in January or early February, 1987, in order to induce him to sign the Notes, and in consideration for signing the Notes, Ford stated that Neu would receive an employment contract and/or voting trust agreement ensuring employment in the Debtor's senior management for a period of five years, and during the term of this employment, the Notes would be forgiven, but that if Neu did not sign the Notes his employment with the Debtor would be terminated. Both Defendants maintain that at the time Ford represented the indebtedness evidenced by the Notes would be forgiven, Ford knew it to be false in that neither he nor Tillex, acting as Plaintiff's parent, had any intention that the Notes would be forgiven.

Neu also alleges that at the time Ford made these representations, he had already instructed management of British Insurance Management Co. ("BIM"), Tillex's subsidiary and Debtor's direct parent, that BIM should vote its shares in the Debtor to remove the Debtor's Board of Directors and fire Neu.

### b. Prior Related Motions.

In June of 1988 AMC commenced an action against Marie Neu a/k/a/ Marie Dumore ("Dumore"). The complaint alleges that Dumore converted $300,000.00, of the Debtor's money and used it as a downpayment on her residence. The Debtor seeks to impose a constructive trust and equity lien in the property and also a turnover of the Debtor's funds, together with an accounting thereof.

Dumore is represented in that proceeding by the law firm of Rosner & Goodman Esq. ("Rosner & Goodman"). In the course of that proceeding the Debtor moved to disqualify Rosner & Goodman from representing Dumore. The Creditors Committee cross-moved to disqualify Rosner & Goodman from representing any defendants in any adversary proceedings in which AMC

is a party.[1] The basis for these motions was that Rosner & Goodman received confidential information related to AMC during their prior representation of AMC and that there is a substantial relationship between their prior representation and the matter at issue in that adversary proceeding.

Rosner & Goodman have represented the Debtor on numerous occasions. They were retained in March of 1985 when AMC entered into a transaction that resulted in Tillex acquiring AMC in exchange for Tillex Stock. Rosner & Goodman were retained again in October/November of 1985, to represent the interest of AMC in litigation commenced under the Insurance Law, in the Supreme Court, New York County. Additionally the firm was retained to conduct an internal investigation in connection with the preparation of documents for an audit of AMC. During that period of time, Goodman or a member of his firm, prepared the Notes in question in the instant adversary proceeding, the Board of Directors resolutions and shareholder consents in support of these Notes.

In opposition to the motion and cross-motion in the Dumore action, Rosner & Goodman contended that they should only be disqualified if they were in a position to receive information which their former client, the Debtor, reasonably expected to withhold from their present clients, including Dumore; and, the issues in the Dumore action in which disqualification was sought are substantially related to their prior representation. Since Dumore was a Director of the corporation at that time, and privy to corporate goings on, they thus argued that the Debtor could not reasonably expect that their confidential information would have been withheld from her.

On October 28, 1988 after a hearing, the motions to disqualify Rosner & Goodman were denied. This Court found that Rosner & Goodman had no opportunity to receive information in which AMC could have an expectation of confidentiality since Rosner & Goodman received any and all information they now possess with respect to the Debtor from Neu, or, from other Officers or Directors of the Debtor in the presence of Neu.

More importantly this Court reasoned that this was not the type of case where issues such as trade secrets, or unfair competition are at issue. In those types of cases, protecting a former clients secrets is a compelling reason to disqualify counsel. In this case the potential damage which would result from any breach of confidence is *de minimis*. The reason behind enforcing the rule does not exist in this case because it appears there is no opportunity for the Debtor to revive itself, reorganize, or rehabilitate itself; this Chapter 11 case is purely a liquidation one.[2] There is nothing left for this Debtor to protect. This court also found there was no substantial relationship between the subject matter of prior representation of AMC and the subject matter of these proceedings.[3] Additionally, this court came to the conclusion after considering evidence presented at the hearing and the arguments contained in the numerous accompanying briefs and memoranda that any motion to disqualify Rosner & Goodman was premature. This court recognized that there may come a time when a conflict of interest may arise, and in that case a motion to disqualify would be promptly granted. For that reason it may have been better for the client to go out and get another attorney. However at that

---

1. At a Hearing on October 28, 1988, the attorney for the creditors committee stated that various depositions under bankruptcy Rule 2004 indicated that the Debtor may have a cause of action against David Gershuny and his father Bernard Gershuny for converting funds that rightfully belonged to the Debtor. When the attorney for the Creditors Committee attempted to depose Messrs. Gershuny in a Bankruptcy Rule 2004 examination Rosner & Goodman indicated they would be representing both of them.

2. Section 1123 of the Bankruptcy Code permits a liquidation of the debtors assets.

3. In a related action, *Neu v. Ford et al.*, No. 87–6465 (N.Y.Sup.Ct., 1st Dept.), the court denied a motion to disqualify Rosner & Goodman because the movant failed to demonstrate that Rosner & Goodman were in a position to receive confidential information of Tillex Co., the ultimate parent of the Debtor.

point, considering the lack of actual prejudice to the Debtor, the equities weighed in favor of protecting the defendants freedom to choice her own Counsel.

### c. The Pending Motion.

The Committee for the Creditors renewed their application, and moved to disqualify Rosner & Goodman from representing the Neu and Gershuny in this instant adversary proceeding on two grounds: first, that Andrew Goodman ("Goodman") a member of the firm of Rosner & Goodman undoubtedly will be called as a witness in this action, and second, Rosner & Goodman previously represented the Debtor.

### ANALYSIS

█ Is has already been decided by this Court that their is no reason to disqualify Rosner & Goodman on the basis they previously represented the Debtor. No new facts have come to light to warrant a change of position.

The fact that a member of the firm of Rosner & Goodman ought to be a witness in this proceeding as a basis for disqualification was not at issue in the original motion to disqualify. All parties concede that Goodman ought to be a witness in this proceeding. Goodman was the only other person present at a meeting with Neu and Philip Plaksin ("Plaksin"), the President of Tillex, during which Neu stated that the payments received by Neu and Gershuny were for past compensation and were not loans. Since Goodman is the only non-party witness who can testify with respect to whether or not the Notes were supported by any consideration, he is a necessary witness to this proceeding.

The Model Code of Professional Responsibility DR 5-102(A) (the "Model Code") states in pertinent part:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial

and his firm, if any, shall not continue representation in the trial. . . .

Rosner & Goodman do not take issue with the fact that DR 5-102(A) suggests the disqualification of Goodman and that his firm should not continue representation of their clients in this trial. They do contend however, that even though the plain language of DR 5-102(A) indicates that their firm should be disqualified, this court should adopt the view expounded in certain recent cases which reject the idea that a firm must be disqualified whenever a member of the firm will be a witness at trial. See e.g., Paretti v. Cavalier Label Co., 722 F.Supp. 985 (S.D.N.Y.1989); Metromedia Co., v. Fugazy, No. 87 Civ. 2597 (RLC), slip op., 1988 WL 140773 (S.D.N.Y. Dec. 28, 1988) (dicta)): U.S. Risk Managers, Inc. v. Gershuny, 141 A.D.2d 389, 529 N.Y.S.2d 321 (1st Dept 1988) (mem. op.) (dicta)

█ The Model Code, although providing guidance on issues of professional conduct, lacks the force of legislation and is not binding upon this court. See United States v. Wallert, 733 F.Supp. 570, 572 (E.D.N.Y.1990); Paretti, 722 F.Supp. 985 at 986 (citing cases). "[A] court need not treat the Canons of Professional Responsibility as it would a statute that we have no right to amend. We should not abdicate our constitutional function of regulating the Bar to that extent." Foley & Co. v. Vanderbilt, 523 F.2d 1357, 1359-1360 (2d Cir.1975) (concurring opinion). Therefore it is in this court's discretion, to determine if and when to apply the lawyer-witness rule to disqualify an entire firm.

When the rationale for a rule does not apply, neither, if possible should the rule. Paretti, 722 F.Supp. at 989. The rationale behind prohibiting an attorney from acting as witness and advocate simultaneously are expressed in EC 5-9 of the Model Code:

If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a wit-

ness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

The rationale behind disqualifying the entire firm of the testifying attorney is that Courts have "recognized to the extent the client's case is proffered through the advocate-attorney's partner or associate, the advocate partner must indelicately argue their partner's credibility. Moreover, the testifying lawyer's credibility is still impaired since the opposing side can argue that the testifying lawyer still maintains a stake in the litigation." *Jones v. City of Chicago,* 610 F.Supp. 350, 359 (N.D.Ill. 1984) (citations omitted).

Nonetheless there is a strong policy consideration in favor of protecting a party's right to representation by counsel of its choice. "Violations of the Code, as literally read, should not result in removal of counsel unless the conduct 'does ... violence to ... the fundamental values which the [C]anons were written to protect.'" *Paretti* 722 F.Supp. at 988 (citing *Ceramco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 271 (2d Cir.1975)).

Protecting a party's right to choice of counsel is one reason the House of Delegates of the New York State Bar Association has proposed amendments to DR 5–102(A) of the New York Code which would replace the existing lawyer-witness rule with Rule 3.7(b) of the Model Rules of Professional Conduct (the "Rules"). Rule 3.7(b) provides: "A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." [4]

While these amendments to the New York Code will not become binding unless and until they are adopted by the Appellate Division of the State Supreme Court, this court will adopt the lawyer-witness rule proposed in the Model Rules when persuaded that the approach adopted in the Rules is superior to the Code in balancing the interests implicated in a disqualification motion. *See Metromedia,* No. 87 Civ. 2597, slip op. at 11. This Court is convinced that the approach adopted by the Model Rules is not only consistent with the public policy of avoiding confusion between the lawyer's role as advocate and witness but prevents undue interference with the client's ability to be represented by counsel of the client's choice. *See Paretti,* 722 F.Supp. at 989. "[T]he only factor that provides any support for the vicarious disqualification rule [as dictated in DR 5–102(A)] is the possibility that the lawyer-witness might be more easily impeachable for interest due to his firm's interest in the outcome of the litigation. When weighed against the right of a party to representation by the attorney of its choice, the slight possibility of taint which a lawyer witness's association with trial counsel might introduce into the judicial process is insubstantial." *S & S Hotel Ventures v. 777 S.H. Corp.,* 69 N.Y.2d 437, 443 n. 3, 508 N.E.2d 647, 650, 515 N.Y.S.2d 735, 738 (1987) (citations omitted). This is especially true in

4. Rules 1.7 and 1.9 prohibit an attorney from representing a client in a matter in which the attorney has a conflict of interest. Rule 1.9 specifically addresses the case where an attorney may have a conflict of interest with a former client.

Rule 1.9 states:
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client

except as Rule 1.6 [relating to confidential information] or Rule 3.3 [relating to candor toward the court] would permit or require with respect to a client or when the information has become generally known.

This Court has already made findings that the instant matter is not substantially related to the former matters in which Rosner & Goodman represented the Debtor. It has also been determined that the information that Rosner & Goodman possesses is not information that the Debtor could reasonably expect to be kept confidential. Since Rule 1.7 is inapplicable and Rule 1.9 has not been violated, this Court is not precluded from applying Rule 3.7.

the instant proceeding since it is not likely to be tried to a jury.

For the above reasons, this Court has decided to adopt the Model Rule approach, and deny Debtor's application to disqualify Rosner & Goodman from representing Neu in this action.